The Honorable Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw a tie and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Well, good morning. Welcome to the 4th Circuit, and we'll hear our first case, which is United States v.  Ms. McGuire. Good morning, and may it please the Court. Mary McGuire on behalf of Mitchell Washington. Mr. Washington sold a combination of fentanyl and heroin twice. One time was for .219 grams, the second time being for 1.22 grams, and back in 2020 was found to be a career offender at the time of his sentencing. At that time, the guidelines called for a range of 151 months to 188 months. The district court granted a downward variance and sentenced Mr. Washington to 96 months. Without the career offender enhancement, Mr. Washington would have been facing a guideline range of 24 to 30 months. In 2022, Mr. Washington filed a motion for a compassionate release, arguing that a non-retroactive change in the law allowed him to file for a compassionate release because Virginia robbery under Williams no longer qualified as a predicate for the career offender enhancement. The district court found that the 72-month disparity between Mr. Washington's current sentence of 96 months and the applicable guideline range if he were sentenced in 2022 constituted extraordinary and compelling reasons to grant compassionate release. However, the district court denied compassionate release based on the 3553A analysis. This court has made clear in its decisions in Brown, Davis, and the unpublished recent decision in Smith that a district court abuses its discretion when it fails to consider sentencing disparity in the 3553A analysis in compassionate release cases. And while I understand that district courts are not required to address each of the arguments, there has to be evidence in their reasoning that reflects that they have... But in the Tute, Davis, and the other case, the district court didn't consider it at all, did it? It did not consider it at all. Here is our position, Your Honor, in the 3553A analysis. The district court says that an enormous disparity between the sentence received and the sentence he would receive today can support the extraordinary and compelling reasons. Now, granted, that's before he does the specific 3553A, but I don't think you can say that the district court didn't recognize there was a disparity. Well, I'm sorry if that's how the court interpreted what I said. Clearly, the court found the disparity supported extraordinary and compelling reasons. What I'm saying, Your Honor, is that it has to also then be considered in the 3553A analysis. And there is no evidence on this record that it was considered in the 3553A analysis. Okay. So the follow-up to that is that we have said by my count at least twice and maybe more that if a district court mentions something in one part of the analysis, we presume that that analysis carries through to the other part of the analysis. And since this district court found that the disparity was literally the extraordinary and compelling reason and talked about it pretty extensively in that context, why don't we presume that it carried through that analysis? It seems like we've said that at least twice. Your Honor, I recognize that you've said that and most recently said it in the Burley decision, which was my case as well. But we've said it before Burley, too. I mean, I realize Burley puts a crisp point on it maybe that we haven't before, but it's not like Burley is the first time we've ever said that. I understand that, Your Honor. But I think that how this is distinguishable from those cases is in those cases there's some kind of extensive discussion about the sentencing disparity. Here — No, there wasn't extensive discussion. It's when the district court explained that that was the extraordinary and compelling reason that opened the gate to the possibility of compassionate release in the first place. And I guess it depends how you want to characterize extensive discussion. It's simply one sentence where the court finds that the 72-month disparity is a significant and extraordinary and compelling reason to grant compassionate release. That's what the court says, especially given the fact that at the time the court considered this motion, Mr. Washington had served already 41 months, which exceeded the 24- to 30-month sentence. However, I still think that what Davis says, and I think the language in Davis is so important, because what Davis says at 659 is that there must be evidence in their reasoning that reflects the argument has been considered. The discretion of the district court is not boundless, and courts can abuse discretion by failing to adequately explain how it weighed the 3553 factors. And in this case, what happened was I recognized — Maybe I'm misremembering these, but I thought Davis and Brown, at least part of the proposition there, was that the district court didn't consider an enormous disparity anywhere, that that was just absent from the case. Am I remembering those correctly? That is true, Your Honor. In that case, there was not the finding of extraordinary and compelling reasons. Well, not just the finding, that the district court, like, literally didn't mention it. Is that right in those cases? I believe that that is an adequate summation of those cases, but I think that what we have to remember is, going back to what this case said in High, is that there is a two-part analysis on these compassionate release cases. I'm sorry. Say the case name again. I'm sorry. On High. Hyde. High, Your Honor. And what High says is that we first consider — you first consider whether there are extraordinary and compelling reasons, and then you do a 3553A analysis. Those are separate steps of the procedure here. So in our case, it is true that the opinions have said where the analysis is completed in the first part of the extraordinary and compelling, the analysis need not be repeated in part two in the factor consideration. What strikes me as different here from the cases, the previous cases, in this case the court considered the disparities and found those, in fact, to be the extraordinary and compelling reason that takes you to the second step. Are there any cases that you know of where the court actually found the sentencing disparity to be extraordinary and compelling and then did not consider that as a factor in the second step? I do not know of a case to cite to the court on that, Your Honor, but I think that what — is the compelling reason, but then it's never mentioned again in part two. That's correct. And I think that really what Davis talks about is that you have to at least have something in the record that shows that the court explained how it's weighing these factors. And when you look at the court's — the district court's analysis here, which is just two pages of this 18-page decision, what it really focuses on is Mr. Washington's prior criminal history, which was known to the court at the time of the original sentencing, but the court never explains why 96 months is appropriate, why 41 months is not appropriate, why 24 to 30 months is not appropriate. There's nothing in this record that explains the reasoning for how the court got to the decision not to grant compassionate release. And there has to be something in the record that this court can look to to determine whether or not the district court abused its discretion or not. So what if — let me give you this hypo. The district court order is precisely the same as in this case, but with one difference. And it's at the very end of the 3553 analysis. The court has one sentence that says, basically, the court acknowledges, as it has already mentioned, in finding extraordinary and compelling reason that there is a big disparity. However, the court finds that's outweighed by all the factors the court has just identified. Would that satisfy your challenge at that point? That's all — everything else is verbatim the same. I think that that would come close, Your Honor, yes, because it would at least acknowledge that the district court had understood the argument. I don't understand how that doesn't run straight into Burley and Moody, where we say that if a district court mentions something earlier, we presume it carries through. This would just be requiring the district court to say, notwithstanding the Fourth Circuit has said, I don't have to say the same thing again, I actually do have to say the same thing again. Well, it's not simply repeating it twice, Your Honor, but it's acknowledging it within the context of the 3553A factors. And here, sentencing disparity is a factor under 3553A6 that I believe needs to be addressed statutorily within the analysis of 3553A. Here, 3553A is never even mentioned — in the analysis of the district court. The district court doesn't even acknowledge in its discussion the disparity. And unlike Burley, I don't believe — you know, again, Your Honor, I may disagree on this, that there's an extensive discussion of the sentencing disparity in the extraordinary and compelling section here. But there has to be some acknowledgment of how that sentencing disparity impacts those other 3553A factors, whether they're under 3553A, where we talk about the need to promote respect for the law, the need to provide just punishment and afford adequate deterrence. But also, we need to look at the 3553A sentencing disparity. It's a statutory factor that is required to be discussed and acknowledged.  But don't our cases say that they're precisely the opposite, that district courts are not required to discuss every one of the factors? I — they don't have to tick them off. There doesn't have to be a tick mark under each factor. But there needs to be enough in the record to demonstrate in the reasoning that the district court considered the argument. And here, Your Honor, my position is that there is not enough in this record to show that the district court considered the argument when doing its 3553A analysis in this case. And it's also significant here because of the original sentencing in this case, the district court granted a downward variance to 96 months. So if the court were to look at this record now, the new guidelines would be 24 to 30 months. And so therefore, to substantiate the 96-month sentence that was originally imposed against Mr. Washington in this case, we're talking about a significant — But by the same judge both times? By the same judge both times, Your Honor, yes. But it would be a significant — a 50-month upward variance or upward departure. And clearly, this case law by this Court says when you're talking in sentencing terms and you're considering upward variances and upward departures, the more significant that upward departure or upward variance, the more significant the explanation has to be. And so in this case, the new guideline range for Mr. Washington would be 24 to 30 months. But yet the court seems to let stand a 96-month sentence with no explanation in the 3553A analysis as to why that is the appropriate number. And here, my position is that the court has to explain it and there has to be enough on this record for this court to understand the reasoning that the district court exercised in this case for not granting compassionate release. And my position is that this record does not support that. So you've maybe addressed this already, but something you just said surfaced for me. I just have this feeling that this is a substantive reasonableness challenge masquerading as a procedural reasonableness challenge, that the real objection — I have this — although you have not made a substantive reasonableness challenging, it seems to me at the tenor of your brief and the tenor of your — that there is actually nothing this district court judge would say that you think could adequately explain this sentence. Would you like to address my feeling that that seems to be lurking? Because I just feel like almost all the individual procedural reasonableness arguments run into a brick wall of something this court has already said. And so it feels to me that this sentence is just too long. What do I do with that? Well, I think you look at what this court has said in cases like Davis and Brown and talk about the sheer length of the sentence and where this court has said that is something to be considered in the 3553 analysis. And here — In the procedural — In the procedural realm. And here, that's exactly what we have. This court did not consider the sheer length and sentence here from somebody serving a 96-month sentence to now what a guideline range would be if he were sentenced today, which is 24 to 30 months. And so therefore, without that analysis, this court — there's not enough in this record to exercise — to understand the reasoning for why the court comes to this number of 96 months. And there needs to be an explanation of that given the sheer length. Could I ask you something about what may be an impending mootness issue? Yes. Are you aware, is Mr. Washington's projected release date still January 21st, 2026? Yes, it is, Your Honor. So if we remand to the district court, what practical effect is that going to have in the world? Well, I think I'm very much aware of this issue, given the fact that this has lingered for so long. And quite frankly, I think what I would ask the court to do is not only remand the case, but remand it with the specific instructions to grant the motion for a compassionate release. Because otherwise time's going to run out. Otherwise, it doesn't matter for Mr. Washington. Exactly. And if the court doesn't have any further questions for me on this, then I'm happy to reserve the remainder of my time for rebuttal. Thank you very much.  Mr. Sawyers, you can give us your side. Good morning, Your Honors. And may it please the Court, Reed Sawyers for the United States. I think Judge Heitens is absolutely correct that this Court has recognized that if a district court addresses an argument in the Extraordinary and Compelling Reasons section, this Court assumes it did so in the 3553A factors as well. That's burly. That's moody. It's recognized repeatedly that this Court looks to the record as the whole, to the totality of the record. The Supreme Court in Chavez-Mesa says it won't turn a blind eye to the record. But more fundamentally, this case is, Judge Heitens, hypothetical. Because at JA 186 to 187, the district court, quote, noted that it, quote, considers a guidelines reduction in the overall 3553A analysis and noted, quote, that Washington has now served more time than his guidelines range would have been if he was sentenced today. So the district court did acknowledge the disparity. Well, that's not quite the same thing. Saying that he's already served more than his guidelines range is not saying that his current sentence is dramatically longer than his guidelines. I mean, those aren't necessarily the same thing right now. The district court did not use magic words, but I think Well, it's not just magic words. I mean, it's one thing to say you've served, I don't know, a month more than your guidelines range today. It would be the other thing to say that under this sentence, you're looking at 70 months longer than your guidelines range would be today. Well, particularly, so these issues can't be perfectly separated, but particularly when we have the extraordinary and compelling reasons analysis where the district court expressly found that the disparity was 72 months, which is the correct calculation. His analysis in the 3553A section even more clearly demonstrates that he considered the sentencing disparity there. And the district court also acknowledged the defendant's efforts at rehabilitation. He noted that he had mostly good conduct throughout incarceration, that he had family support, that he had loose release plans. That's a JA-186. And contrary to my friend's suggestion, the district court did provide the reasons why a sentence of time served was insufficient and why the 3553A factors did not support, quote, release or any reduction to the sentence. He noted that the defendant's criminal history began at the age of 14. This is on JA-185 to 186. That he committed the instant offense while on probation. That he has a tremendously lengthy criminal history consisting of 30 offenses, including serious offenses such as robbery and grand larceny and resisting arrest and brandishing a firearm. That he would have had a criminal history category of 6 without the career offender enhancement. And that he committed this crime. Counsel, you've got plenty of time. You can slow down a little bit if you want to. I'm sorry, Your Honor. And that he committed this crime at the age of 45. So I think the district court's 3553A analysis amply supported its refusal to reduce the sentence. And the district court did address the guidelines range at both the 3553A step and at the extraordinary and compelling reason step. You know, I asked your colleague the same question. What strikes me as different in this case from our prior cases where we say it's enough to consider disparity in the context of the extraordinary and compelling analysis and the district court doesn't need to go back and consider that in the weighing of 3553A stage. But here it's different because it strikes me as a very unusual case where a district court finds a sentencing disparity to be extraordinary and compelling. I could find no other case like it where a court found that the disparity itself was the basis for finding an extraordinary and compelling and then didn't go on to consider that factor in the weighing. Do you know of a case where that was true? No, Your Honor. And I would just add J186 to 187. The district court did consider the reality that Washington has now served more time than his guidelines would have been. So he did. He didn't specifically talk about a sentencing disparity and the change in the rule. Well, I think there's no other way to read that language other than referring to the disparity that it had identified in the extraordinary and compelling reason section. And I think that the inference, the assumption, that a district court considered something at the 3553A step after discussing it in the extraordinary and compelling reason step is stronger when the district court finds that to be extraordinary and compelling because you could imagine that if a district court finds something is not extraordinary and compelling, that's minimizing the significance of that factor. And you might think, well, maybe they also didn't consider it in the 3553A step if they have found it's not extraordinary and compelling. But the reality that a district court found that something is extraordinary and compelling makes it only more likely that they would have considered it in the 3553A section. I'd also like to address this idea that the court should remand with instructions to grant. That is not an argument that was advanced by my friend in their opening brief, in their reply brief. So that has been waived. And this is not in the record. But, of course, if the court is going to essentially conduct the 3553A analysis for itself, I would note that the defendant incurred a significant disciplinary infraction in 2024. If the court is interested, I can file a 28J on that. But that would further demonstrate... But that wasn't part of what the district court considered in this case. Because that predated that, didn't it? Yes, Your Honor. And I don't think it's relevant to the analysis we have on appeal, which is essentially whether the district court abused its discretion in explaining its reasoning. But if this court is considering, essentially, de novo analyzing the 3553A factors for itself and ordering the grant of compassionate release, then I would just note that there's a serious disciplinary infraction last year for using drugs. And that goes to the heart of the 3553A factors because the mitigation argument is that Washington is a drug addict and can't control himself while he's on drugs. We're outside the record now. Yes, Your Honor. If the court has no further questions... Can I ask you this one? If there were... If we were to not do that, if we were to simply send it back to the district court to essentially do the do-over, would the intervening policy statement from the Sentencing Commission... Would this be like a re-sentencing? My question is what? The threshold question is, would the updated guidance from the Sentencing Commission apply if we told the district court to do it again? Yes, Your Honor. This court said that in Davis and in Crawley, which is not cited in our briefs because it postdates our response brief. This court made it even more clear that the policy statement, in effect, at the time the district court decides a motion for compassionate release... Well, would this defendant be qualified? I thought they said something about you had to serve a minimum of 10 years. Yes, Your Honor. So the policy statement would apply, in honor to Judge Hyten's question. And this defendant would not qualify under B6 because he had not served 10 years. And Crawley makes clear that 10 years actually means 10 years. And, of course, his sentence is only 96 months, 8 years. So he would not qualify under B6. He could try to argue he qualifies under B5, which is sort of the totality of the circumstances. But, obviously, we would contest that and don't think that he would qualify under B5. So, in our view, the district court would not be able to grant a compassionate release at the Extraordinary and Compelling Reasons step, not to mention the 3553A step. Thank you very much. Ms. McGuire, you've got some time left. Thank you, Your Honor. I would just like to address two things very briefly. One, obviously, Your Honor, I appreciate your comments about information outside of the record. And I would ask the Court not to consider anything that the government has mentioned about Mr. Washington's conduct in 2024. I don't think that... Sure, but if... I mean, I don't know if we're going to get here. But if you ask us to do the extraordinary thing of not only vacating the district court's decision, and telling it to do it again, but to tell it it must grant compassionate release, I mean, I don't know how we cannot consider all the facts. It seemed like you opened the door into that when you asked us to take the step of not simply telling the district court to do a do-over, but for ordaining the result. Well, Your Honor, I think it could be presented at the time if this court... If you choose to remand it and tell the court to reconsider it, we can do it, but by then, Mr. Washington's going to be out of jail. I mean, that's the problem. That's really the problem for Mr. Washington, and we're trying to get some relief for Mr. Washington. And so that is why I have the position that I do. But in terms of the criminal history, which is really something that the government focuses on extensively here, as did the district court, I would just simply note that the criminal history was known to the district court at the time that it sentenced Mr. Washington. Mr. Washington would be a criminal history Category 6 whether or not he was a career offender or not. And, in fact, the district court knew of Mr. Washington's criminal history when it granted a downward variance from the original guidelines in this case. And so, therefore, I believe that the court needs to go beyond that and to look at the entire analysis in the two pages that are found at JA 185 and 186 and acknowledge that the 72-month sentencing disparity is not mentioned by the district court at any time during that analysis. And, to me, that is where the flaw is because under 3553A6, the court must consider sentencing disparity in the 3553 analysis. Thank you. All right. Our note says you're the court-assigned federal public defender, but you're in the Western District. Yes, Your Honor, but Mr. Washington was... The Eastern District. No, I was an assistant federal defender in the Eastern District for 23 years prior to becoming the federal defender in the Western District, and Mr. Washington was my client when I was in that office. So it was a legacy. Yes. All right. Thank you very much. We appreciate the argument of both counsel. We're now going to come down and recounsel and go on to our next case. Thank you.
judges: G. Steven Agee, Toby J. Heytens, Nicole G. Berner